IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PEACEHEALTH, a Washington non-profit corporation,

    Plaintiff,

v.

HEALTH NET HEALTH PLAN OF OREGON, INC., an Oregon corporation; and TRILLIUM COMMUNITY HEALTH PLAN, INC., an Oregon corporation,

    Defendants.

Civ. No. 6:19-cv-01648-MK

TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION

**MCSHANE, Judge**:

  Plaintiff PeaceHealth "operates hospitals and other healthcare services in the Northwest, including Oregon and Washington." Hodgkinson Decl. ¶ 2; ECF No. 4. PeaceHealth "is the largest health care provider in Lane County, Oregon and Clark County, Washington." *Id.* Defendants Trillium Community Health Plan, Inc. ("Trillium") and Health Net Health Plan of Oregon, Inc. ("Health Net") offer Medicare Advantage ("MA") plans to eligible consumers. *Id.* at ¶ 3. PeaceHealth alleges defendants violated the Lanham Act, 15 U.S.C. § 1125 by making false or misleading statements regarding PeaceHealth's status as an in-plan provider on

1 – OPINION AND ORDER

defendants' 2020 MA plans. PeaceHealth moved for an emergency temporary restraining order, arguing that absent injunctive relief, PeaceHealth faces the likelihood of irreparable harm, largely on the basis of a loss of goodwill. The Court heard oral arguments just three days after PeaceHealth filed its complaint. Given the somewhat rushed nature of the proceedings, the Court emphasizes that none of the findings or conclusions outlined below are final rulings on the merits. That said, the Court concludes PeaceHealth is entitled to injunctive relief at this time.

## STANDARDS

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 374 (2008). The mere possibility of irreparable harm is not enough. Rather, the plaintiff must establish such harm is likely. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The standards for issuing a temporary restraining order are similar to those required for a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Ca. 1995). The court's decision on a motion for a preliminary injunction is not a ruling on the merits. *See Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

## DISCUSSION

To prevail on a claim for false advertising under the Lanham Act, PeaceHealth must demonstrate:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant

caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

At this stage, based on the limited record before the Court, I conclude PeaceHealth has demonstrated a reasonable likelihood of success on their claim that defendant's false or misleading statements violated the Lanham Act. Some background is necessary to understand the context of the current dispute.

In 2004, PeaceHealth and Health Net entered into an agreement where PeaceHealth would provide hospital services as an in-network provider to Health Net's Medicare Advantage enrollees. Hodgkinson Decl. ¶ 4; ECF No. 4. In 2012, PeaceHealth entered into a similar agreement with Trillium. "The terms of [these agreements] were periodically renegotiated." *Id.* at ¶ 6.

In April 2019, Kimberly Hodgkinson, PeaceHealth's Executive VP and CFO, informed defendants' president (via telephone call and letter) that because the parties were unable to reach an agreement regarding the Medicare Advantage plans, PeaceHealth would terminate the agreements effective January 1, 2020. *Id.* at ¶¶ 7-8. In similar conversations in June and July 2019, Hodgkinson "again confirmed that PeaceHealth would no longer be an in-network provider with [defendants' Medicare Advantage] plans beginning January 1, 2020. *Id.* at ¶¶ 9-10.

On September 30, 2019 and again on October 1, 2019, Hodgkinson called defendants' newly appointed President and "reiterated that PeaceHealth would not be an in-network provider under the 2020 MA Plans. I expressed concern that Health Net and Trillium appeared to be representing to brokers that PeaceHealth would be in-network under the 2020 MA Plans." *Id.* at

3 – OPINION AND ORDER

¶¶ 12-13. Also on October 1, 2019, PeaceHealth sent letters to defendants. The letter to Health Net stated:

> This letter is to remind you that, as of January 1, 2020, PeaceHealth will not be contracted with Health Net Health Plan of Oregon, Inc's (Health Net) Medicare Advantage (MA) plans. As of that date, our PeaceHealth Medical Group provider panels will be closed to patients enrolled in non-contracted MA plans.
>
> Unfortunately, it has come to our attention that your website still lists PeaceHealth as in-network, and that your company has informed brokers in Lane and Clark Counties that PeaceHealth is in-network, notwithstanding that we terminated our MA contracts with you in April 2019. As you know, the Centers for Medicare and Medicaid Services Medicare Communications and Marketing Guidelines prohibit communications activities that are materially inaccurate, misleading, or otherwise make misrepresentations or communications that could confuse beneficiaries. We also note that MA plans are responsible for ensuring their agents/brokers abide by all applicable state and federal laws, regulations, and requirements.
>
> According we request that you do not list PeaceHealth as being in-network with any Health Net MA plan and that you communicate PeaceHealth's non-contracted status clearly to your members, agents, and brokers. <u>Further, we request that you clarify any false, inaccurate, or potentially misleading statements or materials provided to your members or brokers to clearly indicate that PeaceHealth is not in-network beginning January 1, 2020</u>. With open enrollment beginning October 15, 2019, time is of the essence. Please confirm in writing by Tuesday, October 8, 2019, that you have taken steps to remove any potential confusion around PeaceHealth's non-contracted status.

Hodgkinson Decl. Ex. 2, 1 (emphasis in original).

Hodgkinson and Hummer met on October 8, 2019. Hodgkinson "learned shortly before the meeting started that Mr. Hummer had brought his Chief Financial Officer with him and that he intended to discuss the termination of the 2020 MA Plans. Because Mr. Hummer had escalated the meeting and was bringing others with him, I asked Mr. Hendargo [PeaceHealth's

System Director of Payor Contracting] to join me for the meeting." Id. at ¶ 17. In a sworn declaration, Hodgkinson stated:

> I believe I communicated effectively to [Mr. Hummer] that those [April 16, 2019 and October 1, 2019] letters—and our follow-up meetings and communications on the subject—meant what they said: that PeaceHealth would not contract with Health Net or Trillium for MA plans starting January 1, 2020. I asked Mr. Hummer to correct the misinformation that Health Net and Trillium were delivering to brokers, which was leading brokers to believe that PeaceHealth would be in-plan for 2020. I then brought the meeting to a close.
>
> 19. At the conclusion of the Vancouver Meeting, is it my opinion that Mr. Hummer could not have reasonably believed that there was any possibility that PeaceHealth would contract with Health Net or Trillium for the 2020 MA Plans.

*Id.* at ¶ 18-19.

With the above background in mind, the Court turns to the alleged misstatements. Some statements were made to insurance brokers, other statements to consumers. The alleged statements to brokers generally acknowledged that the parties were in negotiations, but implied defendants would remain "in-plan" on January 1, 2020. Golden Decl. ¶¶ 7-11; ECF No. 6. While defendants implied the parties would reach middle ground, PeaceHealth informed brokers that defendants would no longer be "in plan" in the new year. At this stage, especially as the two sides continued to meet until October 8, 2019, it is difficult to find that defendants made false or misleading statements to the brokers.

Much more concerning to the Court are defendants' statements to the public. PeaceHealth submitted screen shots from defendants' webpages. Hendargo Decl. Ex. 2; ECF No. 5. The screenshots indicate PeaceHealth hospitals and providers were "in plan" for defendants' 2020 plans. *Id.* Before oral argument, the Court accessed Health Net's website. When searching for "PeaceHealth" in the 2020 provider search portal, the Court obtained three results: PeaceHealth

Urgent Care, PeaceHealth Urgent Care West, and PeaceHealth Laboratories Importantly, consumers using this search will clearly see "Inactive after 12/31/2019 in multiple networks" under each result. However, a consumer searching for a specific PeaceHealth doctor, such as Dr. Jill Chaplin, will not see Health Net's "Inactive after 12/31/2019 in multiple networks" notice. Hendargo Decl. Ex. 2, 1. At this stage, PeaceHealth has demonstrated a consumer seeking to confirm whether a specific doctor is "in plan" for Health Net's 2020 offering is likely to be misled by Health Net's 2020 provider search function.

Especially considering the plans at issue cover society's most vulnerable (i.e., disabled and elderly individuals), the confusion noted above is quite concerning. Additionally, when open enrollment closes in another month or so, any deceived consumers will be stuck until the following year's open enrollment. Consumers misled by Health Net's 2020 provider search function would arrive at a PeaceHealth provider in 2020 only to then realize PeaceHealth is no longer "in plan." This confusion will likely lead to increased administrative costs to PeaceHealth, in addition to reputational damage in the form of lost goodwill. Hodgkinson Decl. ¶ 23. Additionally, the Court presumes the misleading statements would cause some consumers who would have switched plans to instead remain with defendants' plans. When those consumers are not covered—and likely unable to afford out-of-pocket costs to see an out-of-plan provider—PeaceHealth will experience the loss of providing care to those consumers.

Given the above, and given that open enrollment began last week, consumers are likely currently being misled into believing PeaceHealth will remain "in plan" as of January 1, 2020. Especially given the vulnerable status of those affected, there is a grave risk of an ongoing threat

to those individuals.[1] This threat, along with the fact that open enrollment ends in another month or so, means injunctive relief is necessary to better inform the public of the dramatic changes to defendants' plans. The Court requested PeaceHealth propose the form of notice and adopts that notice here.[2] Therefore, defendants are ordered to: put the notices described below on the websites provided below; and send email notification to brokers. The Court adopts PeaceHealth's proposal, described below:

1. **URLs on which notice must be posted:**

**Health Net:**

- https://shop.healthnetadvantage.com/medicareadv/#/plans
- https://member.membersecurelogin.com/sso/login?service=https%3A%2F%2Fmember.membersecurelogin.com%2Fmedicare%2Fj_spring_cas_security_check
- https://www.healthnet.com/portal/member/providerSearch.action#ProviderTypePlace:97411:Coos%20County:OR:97411%7C10%7C43.0947438%7C-124.36396630000002%7C%7C%7C%7C%7C:%7C%7Cfalse%7Cfalse%7Cfalse%7C%7Cchaplin:A11%20Providers%7C%7C%7C%7C%7CGRID%7Cscore%20asc%7C0%7C12%7CBY_ADDRESS%7CCoos%20County%7COR%7C97411%7CBandon%7Cfalse%7C%7Cfalse%7CA11%7CNEXT%7Cfalse%7Cfalse%7C
- https://broker.brokersecureportal.com/sso/login?service=https%3A%2F%2Fbroker.brokersecureportal.com%2Fbrokerconnect%2Fj_spring_cas_security_check

**Trillium (in Lane County only):**

- https://providersearch.trilliumhealthplan.com/search-results
- https://providersearch.trilliumhealthplan.com/search-details
- https://shop.trilliumadvantage.com/medicareadv/#/plans
- https://member.membersecurelogin.com/sso/login?service=https%3A%2F%2Fmember.membersecurelogin.com%2Fmedicare%2Fj_spring_cas_security_check

---

[1] The threat to the public demonstrates injunctive relief is in the public interest. *Winter*, 555 U.S. at 20.
[2] The Court granted defendants until the close of business today to submit briefings on any regulatory issues regarding emails to members.

7 – OPINION AND ORDER

- https://broker.brokersecureportal.com/sso/login?service=https%3A%2F%2Fbroker.brokersecureportal.com%2Fbrokerconnect%2Fj_spring_cas_security_check

2. <u>Text to be posted on HEALTH NET URLs</u>:

**IMPORTANT NOTICE – PEACEHEALTH NOT IN-NETWORK AS OF 1/1/2020**

HEALTH NET HEALTH PLAN OF OREGON, INC. WILL NOT HAVE A CONTRACT WITH PEACEHEALTH BEGINNING JANUARY 1, 2020. AS A RESULT, PEACEHEALTH IS NON-CONTRACTED AND WILL NOT BE IN-NETWORK WITH ANY HEALTH NET HEALTH PLAN OF OREGON MEDICARE ADVANTAGE PLANS. NON-CONTRACTED PROVIDERS MAY NOT ACCEPT HEALTH NET INSURANCE.

3. <u>Text to be posted on TRILLIUM URLs</u>:

**IMPORTANT NOTICE FOR MEDICARE ADVANTAGE – PEACEHEALTH NOT IN-NETWORK AS OF 1/1/2020**

TRILLIUM COMMUNITY HEALTH PLAN WILL NOT HAVE A CONTRACT WITH PEACEHEALTH FOR MEDICARE ADVANTAGE PLANS, INCLUDING DUAL SPECIAL NEEDS PROGRAMS (DSNP), BEGINNING JANUARY 1, 2020. AS A RESULT, PEACEHEALTH IS NON-CONTRACTED AND WILL NOT BE IN-NETWORK WITH ANY TRILLIUM MEDICARE ADVANTAGE PLANS, INCLUDING DSNPs. NON-CONTRACTED PROVIDERS MAY NOT ACCEPT TRILLIUM.

4. <u>Font, Point Size, Color and Location on URL where notice must appear</u>:

On each URL, all text must be in banner format, CAPITALIZED and in 18-point Arial font. The banner must include a red background with the text of the message in white lettering. The headline must be in bold font. The notice must be inserted between one and two inches below the top of the screen. To illustrate, the text will go where the words "Sample Company Post Employee Homepage Notice" appear in the example below:

[Screenshot example showing a "Sample Company Post Employee Homepage Notice" interface with an Add/Edit Employee Homepage Notice field containing sample text "Don't forget to sign up for the free trip to <b>Disneyland</b> in July! Bring the whole family."]

5. **Text of notices Defendants must email to all HEALTH NET and TRILLIUM insurance brokers:**

The text, font, and point size used in the emailed notice must be the same as identified in Sections 2, 3 and 4 above. The subject line of the email related to Health Net shall state: "IMPORTANT NOTICE FOR HEALTH NET MEDICARE ADVANTAGE." The subject line of the email related to Trillium shall state: "IMPORTANT NOTICE FOR TRILLIUM MEDICARE ADVANTAGE AND DUAL SPECIAL NEEDS PROGRAMS."

The Court recognizes that requiring defendants to take the above affirmative actions raises First Amendment issues. *See* Def. Mem. at n.9; ECF No. 16. However, the compelled speech here, that PeaceHealth will not be "in plan" as of January 1, 2020, is purely factual and not in dispute. The public has a right to know that the largest provider in the regions at issue will no longer be "in plan," and the time to be so informed is during open enrollment. However, given the rushed nature of the proceedings so far, defendants are granted leave for further

briefings as to any First Amendment, or other issue. As noted above, defendants are granted leave to brief the issue regarding emailing to members by the close of business today.

IT IS SO ORDERED.

DATED this 21st day of October, 2019.

      /s/ Michael McShane
**Michael J. McShane
United States District Judge**